UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WAYNE MILLER and
DOROTHY MILLER,

      Movants,

vs.                                            CIVIL ACTION NO. 1:13cv190

KEITH J. PAPPAS and
CLEAR MOUNTAIN BANK, LLC,

      Respondents.

### OPINION/ REPORT AND RECOMMENDATION
### TO DENY MOTION FOR PRELIMINARY INJUNCTION/TEMPORARY
### RESTRAINING ORDER

On August 21, 2013, Plaintiffs, pro se, ("Millers") filed a "Motion for Preliminary Inunction/Temporary Restraining Order Pursuant to Federal Rules of Civil Procedure Rule 65(A)[DE 1]. They named as Respondents Keith J. Pappas and Clear Mountain Bank, LLC ("Pappas" and "Bank"). The case was referred to the undersigned United States Magistrate Judge by United States District Judge Irene M. Keeley on August 22, 2013 [DE 4].

In their Motion, the Millers essentially challenge the foreclosure of certain "valuable real estate . . . . that generated revenue to maintain other properties." The motion fails for several reasons.

### **PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER**

As a preliminary matter, the challenged foreclosure was scheduled for August 21, 2013, at noon. This matter was docketed that same date at 2:41 p.m., after the scheduled foreclosure time. The entire Motion may therefore be moot.

Although the Court does not know whether the foreclosure was actually carried out, there is an additional problem with the timing of the motion, in that any Order this Court made would have

to have been *ex parte*. "A temporary restraining order should be restricted to serving the underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Federal Rule of Civil Procedure 65 provides that "the Court may issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certified in writing any efforts made to give notice and the reasons why it should not be required."

The Millers have not complied with the notice requirements of Rule 65(b), requiring that the they certify in writing any efforts to contact the Respondents about the requested relief. The Court understands the Millers are acting *pro se*; however, they cite the Rule in their own heading, and have been through the State Courts on the same or nearly identical matters in the recent past, with the assistance of counsel. Although there is a Certificate of Service attached to the Motion, it states a copy of the motion was mailed, only to Pappas, on August 21, 2013, the date of the sale. There is simply no way in which either Respondent would have received Notice prior to the scheduled sale.

Further, the Millers have not supplied "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." They do not claim any of the real estate sought to be foreclosed is their primary or a family member's any residence. Instead, they expressly state the "property in question generates revenue to maintain other real estate." In the undersigned's view,

2

the Millers have not met their burden. There is case law to support a finding that the loss of <u>one's own home</u> through foreclosure can constitute an irreparable injury in certain circumstances. See, e.g., <u>Stanfield v. CitiMortgage, Inc.</u>, 2009 WL 4507003 (D.S.C. 2009); however, even in that case the court found no irreparable injury where the homeowner sought a loan beyond her financial means and expectation of job loss. The real estate complained of in the Millers' case is clearly not their own primary residence. They took out the loans to assist another, non-family member/fellow businessman with his own financial troubles. Therefore, they have not made a clear showing that they are likely to be immediately and irreparably harmed by the sale of real estate not consisting of their residence.

For all of the above reasons, the undersigned United States Magistrate Judge **RECOMMENDS** the Motion for Preliminary Injunction/Temporary Restraining Order Pursuant to Federal Rules of Civil Procedure Rule 65(A) be **DENIED**.

### JURISDICTION

More importantly, however, is that it is not entirely clear to the undersigned upon what basis the Millers invoke the jurisdiction of this Court. They begin the paragraph headed "Jurisdiction" by stating that the value or potential value at issue "dramatically exceeds the minimum." If, however, the Millers are attempting to invoke diversity jurisdiction, they must fail in that it is clear from their own Certificate of Service that at least Pappas is a resident of West Virginia, as are the Millers. Diversity Jurisdiction therefore does not exist.

As for Federal Question Jurisdiction, the Millers reference only the Federal Consumer Protection Act. The citation provided by the Millers is incorrect, and the undersigned could find no Act, listed as such, in the United States Code. The undersigned concludes they refer to the Equal

Opportunity Act, 15 U.S.C. section 1691. As the Millers themselves state in their Motion:

> [The Federal Consumer Protection Act] makes it unlawful for a creditor to discriminate against any consumer with respect to any aspect of a transaction on the basis of race, color, religion, national origin, sex, marital status, or age.

Mr. And Mrs. Miller assert that the FCPA applies to their transactions with the Bank and Pappas because they are 74 years old and 73 years old, respectively.

Importantly, the adjective "consumer," as used in the Act, requires that the money, property, or services which are the subject of the transaction are primarily for person, family, or household purposes." 15 U.S.C.A. section 1691(i). The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." Id. at (x). The Act expressly does not apply to extensions of credit primarily for business, commercial, or agricultural purposes. 1603(1). The undersigned finds the Millers are not "consumers" as defined in the Act. The undersigned also finds the extensions of credit were primarily for business or commercial purposes.

Further, the Millers allege they were discriminated against due to their age. Again, the Act does not apply to their situation. 15 U.S.C.A. section 1691(a) provides, as the Millers state:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital states, or age (provided the applicant has the capacity to contract).

There must be an "adverse action" in regard to the credit transaction. An "adverse action" under the Act means a denial or revocation of credit, a change in the terms of an existing credit arrangement,

or a refusal to grant credit in substantially the amount or on substantially the terms requested. The Millers did not suffer an "adverse action" under the Act. They were granted credit, despite their age.[1]

The undersigned finds the Millers have not stated a claim under the only Federal statute they raise.

In an effort to cover any potential federal claims the Millers meant to assert, the undersigned has interpreted their claims to possibly include the following Federal statutes/Regulations.

### The Truth-in-Lending Act

The Millers do not assert that the Respondents violated the Truth-in-Lending Act; however, they do assert that the Respondents manipulated them into making the transactions, without counsel, knowing their age and declining business sense. They assert that the loan was represented to them as a typical residential loan "in which restrictive commercial regulations would not apply;" however, "the loan constructed was that of a commercial nature which commercial regulations attached that Movant was unaware of, so injunctive relief is warranted." The Court will therefore address the TILA in an abundance of caution.

The TILA is a Federal consumer protection statute that provides consumers with a cause of action against creditors that fail to make required disclosures. 15 U.S.C. sections 1601 *et seq*. The

---

[1]The Court takes judicial notice of a prior case the Millers filed in Preston County Circuit Court in 2011, styled Wayne Miller and Dorothy Miller v. Clear Mountain Bank, Inc. and Trustee Keith Pappas (11-C-11 and 11-C-116)(public record) also involving loans made by the Bank on March 24, 2010. The Court does not know whether this case involves the same loans at issue in the State case. The Court does, however, note that the State Court found, in granting the defendants' motion for summary judgment: "Despite the Plaintiffs' contentions that Mr. Miller is 73 years old and that Mrs. Miller is 72 years old, the evidence is clear that Mr. Miller is a sophisticated businessman with financial experience." (Order Granting Summary Judgment at page 12).

purpose of the TILA is to "promote the informed use of consumer credit by requiring disclosures about its terms and costs. Regulations give consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes." 12 C.F.R. section 226.1(b). As already noted, this matter does not involve a lien on the Millers' principal residence. It also does not involve credit card practices or credit billing disputes.

Further, TILA applies to each individual or business that offers or extends credit when four conditions are met:

(1) credit is offered or extended to consumers;

(2) offering or extension of credit is done regularly;

(3) credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and

(4) credit is primarily for personal, family, or household purposes.

12 C.F.R. section 226.1(c).

The undersigned finds the Bank meets the first three conditions, and would meet the fourth if the credit to the Millers was "primarily for personal, family, or household purposes." As expressed by the Millers, themselves, however, it was not. The first three paragraphs of the Motion refer only to transactions made by the Bank to Robert J. Konchesky. The first paragraph references a meeting between Konchesky and Mr. Miller. Konchesky was seeking a loan from Miller "to finance the monies necessary for attorney fees to defend and aggressively pursue sanctions against the fraud and misrepresentations from other prominent businessmen or entities of West Virginia . . . ." The second paragraph concerns a Mr. Mayfield, who "attempted and continues to attempt to obtain monies in

excess of an agreement " with Mr. Konchesky. That paragraph ends with an allegation that the bank manipulated Konchesky's sister out of three and a half million dollars of security in valuable real estate. Nothing in these paragraphs refers to loans to the Millers.

Finally, in the third paragraph, the Millers state that Pappas executed a deed of trust sale against the Konchesky's real estate. The Millers then proceed to explain the reasons for their taking out their own loans with the Bank as follows:

> Movant had faith in his long time business associate Clear Mount Bank, LLC., to do the right thing once it would become evidence[d] by Movant's financial support to reveal the truth to all sides. For that reason, Movant was more than willing to step into the elaborate course of events to assist the parties that he had previous associations, by first assisting the Koncheskys by commencing to obtain loans through Clear Mountain Bank, LLC.

(Emphasis added). As laudable as the Millers' "stepping in" to help a friend and fellow businessman may be, the Court must find the credit extended to the Millers was not primarily for personal, family, or household purposes. The TILA therefore does not apply.

Even if the TILA applied, the general statute of limitations for damages claims under the TILA is one year after the violation. 15 U.S.C. Section 1640(e). The violation occurs when the transaction is consummated. In re Smith, 737 F.2d 1549 (11th Cir. 1984). The credit transaction is consummated when "a contractual relationship is created between [a creditor and consumer]." Bourgeois v. Haynes Construction Co., 727 F.2d 719 (5th Cir. 1984). The alleged violation in this case occurred March 24, 2010, when the loan transactions were consummated. This action was not commenced until over three years later.

## Fair Debt Collection Practices Act

The Millers also do not invoke the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C.

section 1692; however, the Court will also address that in an abundance of caution. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. section 1692(e).

First, Courts have universally held that the FDCPA does not authorize equitable or injunctive relief. See, e.g., Bolin v. Sears, Roebuck & Co., 231 F.3d 970 (5th Cir. 2000)(collecting cases). Even if the Millers may be entitled to some monetary relief if they can prove a violation of the FDCPA, they cannot obtain a TRO or injunction pursuant to that statute.

Further, an FDCPA claim in this case would fail because the respondents are not "debt collectors" under the facts of this particular case. To be a "debt collector," there must first be a "debt." The Act defines a "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a traction win which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C.A. section 1692a(5).

Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373 (4th Cir. 2006)(Emphasis added).

The term "debt collectors" refers to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. section 1692(a)(6). That term does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." Id. at section 1692 (a)(6)(A). Mortgage companies collecting debts are not "debt collectors." Perry v.

Stewart Title Company, 756 F.2d 1197 (5th Cir. 1985)(noting that the history of the Act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of the debt.)

The Fourth Circuit has held that a law firm or a lawyer functioning as a substitute trustee to enforce a deed of trust <u>may</u> fall subject to the provisions of the FDCPA in some circumstances. <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373 (4th Cir. 2006); however, as already found, the Millers did not take out the loans primarily for personal, family, or household purposes. There was therefore no "debt," as defined in the FDCPA, to be collected.

It is important to note that a denial by this Court of the Millers' claims does not leave them without recourse. They are free to file their complaint in State Court, which they have done regarding a number of loans transacted with the same bank on the same date as the ones at issue here.

## **RECOMMENDATION**

For the above reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Preliminary Injunction/Temporary Restraining Order Pursuant to Federal Rules of Civil Procedure Rule 65(A) be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984),

cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to Movants/Plaintiffs at their last shown address by Certified United States Mail, Return Receipt Requested, and to counsel of record.

DATED:  September 4,  2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE